OPINION OF THE COURT
Joan S. Kohout, J.
This petition was initiated in the State of Florida on behalf *346 of Regina B. regarding her son Tyrell T. B. (born Dec. 17, 1977), and filed in Monroe County Family Court pursuant to the Uniform Support of Dependents Law (USDL). The petition alleges that the respondent, Robert H., is the father of the subject child and requests child support. Mr. H. is a resident of Monroe County, New York and appeared in response to the petition, entering a denial to the allegations of paternity. A blood grouping test was ordered and a report ultimately received by the court.
The case came on to be heard for a paternity trial on June 2, 1993 at which time petitioner appeared by counsel and the respondent represented himself. At that time petitioner was given an adjournment to make arrangements for the mother to appear regarding the contested paternity issue.
On June 16, 1993 the case again was scheduled for trial concerning paternity. Petitioner’s counsel appeared stating that the mother would not be present and made an application to stay the proceedings or, alternatively, requested that the case be adjourned so that testimony could be taken from the mother in Florida. This request was denied and the case proceeded to trial.
At trial, petitioner offered no proof other than the results of the blood test. According to documents attached to the blood test results, samples of blood were taken from the mother and child in Florida and a sample of the respondent’s blood drawn in Rochester. Apparently, the samples were then forwarded to a laboratory in Greensboro, North Carolina where an analysis occurred. The test results state that Mr. H. cannot be excluded as the biological father of the child and that the probability of paternity is 99.99%.
Mr. H. testified on his own behalf. Mr. H. met Ms. B. in the early seventies when they worked together. Five or six years later in approximately 1977 or 1978 they dated a couple of times over a two-month period. During that time the couple had sexual intercourse twice. During their brief relationship, Mr. H. understood that "there was someone else in the picture” and that he was not the only man involved with Ms. B. Although the parties continued to work together, Ms. B. never told the respondent that she had become pregnant by him and he knew nothing of her allegations until he received the current petition.
The respondent recalled seeing the child Tyrell on one occasion when he came to the parties’ work place and some *347 one informed the respondent that the boy was Ms. B.’s child. Mr. H. was uncertain of the date this occurred, but recalled that the child was not a baby at the time. He did not have any conversations with Ms. B. concerning the boy on that date or any other date.
Mr. H. recalled that Ms. B. left her job in about 1991 and stated that she worked with him during the entire decade of the eighties and apparently worked on and off in the same location during the 1970’s.
CONCLUSIONS OF LAW
Tyrell is now 15 years of age and petitioner seeks to have the respondent adjudicated the biological father of this youngster and to have support awarded. This petition was not brought individually by the mother but was brought on her behalf because her son is a recipient of public assistance. The action was commenced pursuant to New York State USDL, Domestic Relations Law article 3-A, which establishes a procedure for interstate child support proceedings.
In 1987 Domestic Relations Law § 37 was amended to permit a petitioner in an USDL support proceeding to petition for an adjudication of paternity. Subdivision (5) of the statute excuses petitioners from personal pretrial appearances in the proceeding as long as they live outside the county where the petition has been filed or more than 50 miles from that county. The statute, however, contains an important qualification: "if the respondent asserts as a defense that he is not the father of the child for whom support is sought and it appears to the court that the defense is not frivolous, the court may adjudicate the paternity issue if both of the parties are present at the hearing or the proof required in the case indicates that the presence of either or both of the parties is not necessary. ” (Domestic Relations Law § 37 [5] [emphasis added].)
No doubt, the requirement that the mother be present for trial on the paternity issue was included because of the due process issues involved and the enhanced burden of proof that is required at this stage. Petitioner’s burden is to establish paternity by clear and convincing evidence, evidence which is "entirely satisfactory” and creates a genuine belief that respondent is the father of the child. (Matter of Lopez v Sanchez, 34 NY2d 662.)
Given the heavy burden of proof in paternity cases and the fact that credibility of the parties often plays an important *348 role in a court’s decision, the presence of both parties would normally be required in order to properly determine that issue. (See, Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 37.)
While blood grouping test results may be very helpful in resolving the issues of paternity, they are not dispositive of the issues. (See, Matter of Laura U. v Mark V., 156 AD2d 836, 837; Matter of Terri OO. v Michael QQ., 132 AD2d 812, 813.) Thus, the existence of a court-ordered blood test would not eliminate the need for the mother’s testimony.
The court finds that the procedure suggested by petitioner whereby the mother would testify in Florida on the issues raised by the respondent would not satisfactorily allow the respondent to cross-examine her, nor would it permit the court to access the mother’s demeanor and make a meaningful assessment of her credibility. Given the facts credibly presented by the respondent, including his continuing work relationship with the mother and her failure over a 12-year period to inform him of her claim that he was the father of her child, as well as respondent’s claim of lack of access during the time of probable conception, the court finds that the mother’s personal appearance would be required in order to determine the paternity issue.
The court, therefore, dismisses this petition based upon the failure of petitioner to produce the mother for the paternity hearing. The court does not find that an adjournment of this proceeding, as permitted by Domestic Relations Law § 37 (5), would serve the interest of justice since this court’s determination does not preclude the commencement of a non-USDL paternity action by the mother or her representative. The court’s determination in this case only addresses the nonavailability of USDL as a method for determining paternity.